**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   AZ-15-1425-FLJu |
| ) | |
| FRANCES DIANE TOTH, ) | Bk. No.   14-18264-DPC |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| FRANCES DIANE TOTH, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| TROY SHORT; WILLIAM E. PIERCE,) | |
| Trustee, ) | |
| ) | |
| Appellees.[**] ) | |
| _____ ) | |

Argued and Submitted on September 23, 2016
at Phoenix, Arizona

Filed – October 13, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Chief Bankruptcy Judge, Presiding

---

Appearances:    Appellant Frances Diane Toth argued pro se; David
                Smith Chipman of Chipman Glasser, LLC argued on
                behalf of Appellee Troy Short.

---

Before: FARIS, LAFFERTY, and JURY, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[**] Appellee William E. Pierce did not file an answering brief or otherwise participate in this appeal.

**INTRODUCTION**

Faced with the prospect of losing her home, appellant Frances Diane Toth complains that the mistakes and incompetence of her bankruptcy counsel denied her counsel and the effective assistance of counsel, the right to a fair trial, and due process. She appeals the bankruptcy court's rulings denying conversion of her chapter 7[1] bankruptcy case to chapter 13, disapproving a compromise between chapter 7 trustee William E. Pierce ("Trustee") and appellee Troy Allen Short, and ordering the Trustee to market and sell her house.

Ms. Toth deserves our sympathy. Mr. Short abused Ms. Toth during their stormy relationship. In the litigation that ensued, Ms. Toth did not fare well, mostly because of her unfortunate decision to stop participating in that litigation at a critical juncture. But this appeal concerns only two orders of the bankruptcy court, and those orders only addressed a small part of the dispute between Ms. Toth and Mr. Short. Ms. Toth has not convinced us that either of those orders is erroneous. Accordingly, we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

## FACTUAL BACKGROUND[2]

**A. The Colorado civil actions and judgment against Ms. Toth**

Ms. Toth and Mr. Short lived together in Denver, Colorado for approximately two and a half years. During the course of their relationship, they were involved in numerous domestic disputes, some of which gave rise to mutual accusations of threats and physical abuse.

The relationship ended in 2011 amid escalating tensions. Each sought restraining orders against the other, and the parties filed competing civil complaints against each other. In April 2011, a Colorado state court entered a permanent civil restraining order against Mr. Short and denied Mr. Short's request for restraining orders against Ms. Toth and certain of her family members and acquaintances. The parties also mediated and settled their original competing civil lawsuits against each other.

Thereafter, Ms. Toth left Colorado to live in Arizona in a home that she owned from her previous marriage (the "Arizona Property"). She claimed that she kept the Colorado court updated as to her Arizona address.

The parties made reciprocal claims of harassment based on multiple lawsuits filed in various jurisdictions. (Both claimed that, as a result, they had to play "whack-a-mole.") Ms. Toth (and her brother) filed multiple small claims lawsuits against

---

[2] Ms. Toth presents us with an incomplete record on appeal. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

3

Mr. Short in Denver County, Colorado, Chaffee County, Colorado, and Mohave County, Arizona. These actions were consolidated into a single lawsuit in Chaffee County, Colorado.

Mr. Short filed counterclaims against Ms. Toth and her brother for abuse of the legal process, defamation, interference with prospective business advantage, and civil conspiracy. The Colorado court scheduled a hearing to address a variety of pending motions. It directed that, based on Ms. Toth's "prior failure to comply with Court orders and the failure to resolve certain matters via telephonic hearings," all parties needed to be present in person. However, Ms. Toth failed to appear in person at the hearing. The court granted Ms. Toth a continuance on the condition that she pay Mr. Short's attorneys' fees and costs incurred as a result of the hearing; the court warned that, if Ms. Toth did not make such payment, it would enter default judgment against her as to both her claims against Mr. Short and Mr. Short's counterclaims against her.

When Ms. Toth failed to pay Mr. Short's attorneys' fees and costs, Mr. Short moved for default. The Colorado court held that Ms. Toth had "demonstrated willful and deliberate disregard of [the] Court's orders and [her] obligations as a litigant under the applicable rules." The court therefore entered default against Ms. Toth.

The Colorado court scheduled an evidentiary hearing to determine Mr. Short's damages. The day prior to the hearing, the court received a letter from Ms. Toth wherein she recapitulated her claims against Mr. Short and indicated that she would not appear at the hearing. She stated that she has "no qualms about

4

filing bankruptcy against any judgment that is in his favor." She told the judge that Mr. Short "is a true piece of s**t and I am scraping him off my shoe. I am throwing my hands in the air, your honor, as I have no other options."

The Colorado court held the evidentiary hearing the following day. The court adopted the facts as alleged in Mr. Short's counterclaim and stated that Mr. Short had satisfied each element of his claims. The court awarded Mr. Short $133,500 in lost income and $57,134.80 in attorneys' fees ("Colorado Judgment"). Ms. Toth claims she was not properly served with the judgment; she did not appeal or seek relief from the judgment in the Colorado state courts.

Mr. Short then domesticated the Colorado Judgment in Arizona and recorded a judgment lien on the Arizona Property. In December 2014, Mr. Short apparently seized the Arizona Property. Ms. Toth claimed that she did not receive notice of the domestication proceedings or the judgment lien until days after the seizure. Mr. Short proceeded to obtain a writ of execution against the Arizona Property.

**B.   Ms. Toth's chapter 7 bankruptcy**

On December 15, 2014, Ms. Toth filed her chapter 7 bankruptcy petition. She had retained attorney Dale Stoker to represent her in the bankruptcy proceedings.

Ms. Toth filed a motion ("Motion to Avoid Lien") to avoid Mr. Short's judicial lien on the Arizona Property under § 522(f). She asserted that the lien impaired exemptions to which she would be entitled under § 522(b).

Mr. Short objected to Ms. Toth's claimed homestead exemption

5

on the Arizona Property. He argued that the Arizona Property was not Ms. Toth's primary residence, since she had represented to the Colorado court that she resided in California.

Concurrently, Mr. Short filed an adversary complaint against Ms. Toth to determine nondischargeability of the judgment debt pursuant to § 523(a)(6). He claimed, among other things, that Ms. Toth harassed him and abused the legal process by "filing multiple baseless and vexatious small claims lawsuits against Short, one after another, in multiple jurisdictions, with the intent of obtaining as many default judgments as possible and to damage, as much as possible, Short's reputation in his community."[3]

While the issues concerning the judgment lien and nondischargeability complaint were pending, Ms. Toth received her discharge on April 6, 2015.

**1.    The motion to compromise and the motion to set aside**

On June 30, 2015, the Trustee filed a motion to approve a compromise with Mr. Short ("Motion to Compromise"). Noting that there was no unencumbered value in the Arizona Property for the bankruptcy estate, the Trustee proposed that Mr. Short be allowed to market the Arizona Property for sale and decide which offer to accept, subject to court approval.

Ms. Toth initially filed a response approving of the proposed compromise, provided that Mr. Short not be allowed on or

---

[3] On February 18, 2016 (after the commencement of this appeal), the bankruptcy court entered its nondischargeability judgment in favor of Mr. Short. Ms. Toth also appealed that judgment to the BAP (BAP No. AZ-16-1052), but that appeal is not before the Panel at this time.

6

near the Arizona Property. Shortly thereafter, Ms. Toth, through her counsel, withdrew her approval. Instead, she stated that she objected to the compromise. She also stated that she had reached an agreement with the Trustee, whereby the value of the Arizona Property was to be set by an appraisal; if the appraisal exceeded the total of the statutorily exempt amount, the first lien deed of trust, and the costs of sale, then Ms. Toth would be allowed to pay the difference and retain the Arizona Property. She claimed that the "agreement" was memorialized in an e-mail. Based on the appraised value of $275,000, Ms. Toth calculated that the amount due to the Trustee under her proposal would be $22,500.[4]

Ms. Toth's position suffered from a fatal flaw: the Trustee did not agree to her offer. Rather, he stated that the bankruptcy court needed to resolve first the objection to the homestead exemption. Until this question was answered, one could not determine how much Ms. Toth would have to pay.

The next day, Ms. Toth filed pro se a combined opposition to the Motion to Compromise and a motion to set aside Mr. Short's default judgment ("Motion to Set Aside"). Ms. Toth restated her arguments against Mr. Short regarding their prior legal battles in Colorado. As to the Motion to Compromise, she argued that the

---

[4] Ms. Toth's calculations were as follows:

| | |
|---|---|
| Appraisal: | $275,000 |
| Less mortgage of: | $75,000 |
| Less exemption: | $150,000 |
| Less realtor/closing: | $27,500 |
| | |
| Resulting net to Trustee: | $22,500 |

7

restraining order against Mr. Short prevented the bankruptcy court from approving the Motion to Compromise, since it constituted harassment and would allow Mr. Short "to manipulate a third party to control and interface with the Protected Person and her domicile."

As to the Motion to Set Aside the Colorado Judgment, Ms. Toth argued that Mr. Short failed to perfect service upon her, since all documents were sent to her California address. She also argued that Mr. Short perpetrated fraud upon the court by making misleading statements.

At a hearing on September 9, 2015, the bankruptcy court heard a number of motions, including the Motion to Compromise and the Motion to Set Aside. The court orally denied both motions. A minute order entered the same day states that the Motion to Compromise is denied. As far as we can tell, no written order denying the Motion to Set Aside was ever entered.[5]

Although the record does not make it entirely clear, there is some indication that the court denied the Motion to Compromise due to Mr. Short's pending objection to the homestead exemption. Shortly thereafter, Mr. Short withdrew his objection to Ms. Toth's claim of a homestead exemption.

## 2.    The motion to convert

On November 3, 2015, Ms. Toth filed a motion to convert her chapter 7 case to chapter 13 ("Motion to Convert"). She later argued that she was unaware that, by filing for bankruptcy under

---

[5] The minutes note that the Motion to Set Aside was on calendar for the September 9 hearing, but do not include the disposition of that motion.

8

chapter 7, there was a chance that she may lose the Arizona Property. She claimed that Mr. Stoker was unfamiliar with the applicable law and blamed him for providing faulty advice. The Motion to Convert was set for hearing on December 1, 2015.

Mr. Short opposed the Motion to Convert, arguing that Ms. Toth sought conversion in bad faith. He asserted that Ms. Toth had sworn to harm Mr. Short through the bankruptcy process and that the motion was "not a good faith or bona fide effort to pay debt."

### 3.   The renewed motion to compromise

Shortly after Mr. Short withdrew his objection to the homestead exemption, the Trustee filed a renewed motion to approve the compromise with Mr. Short ("Renewed Motion to Compromise"). Ms. Toth opposed the Renewed Motion to Compromise for the same reasons she opposed the initial motion. The Renewed Motion to Compromise was also set for hearing on December 1, 2015.

### 4.   The motion to withdraw

During this time, Ms. Toth's relationship with her attorney, Mr. Stoker, deteriorated. She claimed that he was not responsive, did not file the documents she wanted, did not make the arguments that she requested, and did not seek the discovery that she demanded. She had separate counsel in the adversary proceeding who was willing to take over the bankruptcy case, but only if the court granted the Motion to Convert.

On November 19, Mr. Stoker requested leave to withdraw as Ms. Toth's counsel ("Motion to Withdraw") due to an "irremediable breakdown in the attorney-client relationship." He stated that

9

Ms. Toth had "been notified in writing of the status of the case by providing a copy of this motion" and that he also advised her of the December 1 hearing on the Motion to Convert and Renewed Motion to Compromise. The bankruptcy court granted the withdrawal by order dated November 20.

### 5. The December 1, 2015 hearing

At the December 1 hearing on the Motion to Convert and Renewed Motion to Compromise, Ms. Toth claimed that she was unaware that Mr. Stoker had withdrawn as her counsel and would not argue at the hearing. She admitted that Mr. Stoker might have mailed a copy of the documents to her but that she had not been checking her mail. The bankruptcy court did not find her excuses credible.

Ms. Toth asked the court to continue the hearing for sixty days to allow her to obtain new counsel. The court did not agree to continue the hearing, but rather asked Ms. Toth to explain her position and arguments to the court.

Ms. Toth stated that she was eligible as a chapter 13 debtor. She argued again that she had not been served properly in the Colorado and domestication proceedings. She also blamed Mr. Stoker for advising her to file for chapter 7. She said that "Mr. Stoker has explained to me he doesn't understand Chapter 13 that well so he wanted me to file a Chapter 7 because that's what he does."

Ms. Toth also argued that Mr. Short committed fraud on the court by making false statements. She contended that she did not act in bad faith and was adversely affected by Mr. Short's actions.

10

Regarding the Renewed Motion to Compromise, Ms. Toth argued that allowing Mr. Short or his agent to market the Arizona Property would violate the restraining order, because it would give him control of her assets. She argued that the proposed compromise was not fair, since it did not protect her from Mr. Short.

The court inquired whether Ms. Toth had a competing proposal. Ms. Toth insisted that "the deal that was settled back in February was that they take the $22,000[,]" but now the Trustee and Mr. Short are demanding "everything."

Ultimately, the court denied approval of the compromise. Instead, the court ordered that the Trustee – not Mr. Short - would market and attempt to sell the Arizona Property. If the Arizona Property did not sell for an adequate price within six months, then the Trustee would abandon the Arizona Property. The court also denied the Motion to Convert "for all the reasons stated by the creditor in this case."

The court entered minute orders denying both motions on December 3. It entered an order on the Renewed Motion to Compromise on December 4. Ms. Toth timely filed her notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court denied Ms. Toth the right to counsel or the effective assistance of counsel under the Sixth

11

Amendment, the right to a fair trial, or due process.

## STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. Hansen v. Moore (In re Hansen), 368 B.R. 868, 874 (9th Cir. BAP 2007). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citation omitted). A bankruptcy court clearly errs if its findings were illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    The scope of this appeal is limited.**

It is unclear whether Ms. Toth is appealing only the court's ruling on the Renewed Motion to Compromise, or both the Renewed Motion to Compromise and the Motion to Convert. Her notice of appeal states that she is appealing the bankruptcy court's "MINUTE ENTRY entered in this action On DECEMBER 3, 2015." She attached a copy of the minutes of the hearing on the Renewed Motion to Compromise. She did not reference or attach the minute entry on the Motion to Convert. Her opening brief does not provide any definitive answer.

Ordinarily, we would only consider Ms. Toth's arguments concerning the Renewed Motion to Compromise because that is the only order mentioned in and attached to the notice of appeal. Nevertheless, because Ms. Toth is proceeding pro se, her opening brief makes occasional reference to issues concerning the Motion

12

to Convert, and Mr. Short has not raised an issue regarding the scope of appeal, we construe her appeal as encompassing the denial of her Motion to Convert, as well.

Although we can adopt a generous interpretation of Ms. Toth's notice of appeal, we lack jurisdiction to consider issues that the orders on appeal do not decide. Ms. Toth argues at length about errors in the Colorado state court and the Arizona domestication proceedings. But the orders on appeal do not pertain to those questions (which were previously addressed in her Motion to Set Aside). Therefore, we cannot consider her challenge to the Colorado Judgment or the Arizona domestication of that judgment or her argument that she was denied due process with respect to either of these proceedings.

**B.     The scope of Ms. Toth's arguments is also limited.**

We also note that Ms. Toth's appellate briefs do not argue that the bankruptcy court failed to apply correctly the established standard for approval of a compromise, see, e.g., Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003); Rule 9019, or the statutory standard for conversion from chapter 7 to chapter 13, see, e.g., § 706(a).

Rather, Ms. Toth argues that we should reverse both orders for the same reasons, including denial of counsel, ineffective assistance of counsel, denial of the right to a fair trial, and denial of due process. Because none of these arguments is specific to either of the two orders on appeal, we will consider them in general terms.

13

**C.    The alleged ineffectiveness of Ms. Toth's counsel would not warrant reversal.**

Ms. Toth largely bases her appeal on Mr. Stoker's supposed errors. She argues at length that he erroneously advised her to file a chapter 7 petition, rather than chapter 13; withdrew as counsel a week before the December 1 hearing; did not appear at the hearing; did not provide the court with certain evidence; and did not conduct discovery. In summary, she contends that we should reverse the court's rulings because she did not have effective counsel.

Ms. Toth's arguments are unavailing. Her position rests on a false premise: that she has a constitutional right to counsel and the effective assistance of counsel under the Sixth Amendment. However, the right to counsel does not apply to bankruptcy proceedings. She cites no authority to the contrary.

It is well settled that parties to a bankruptcy proceeding do not have a constitutional right to counsel. See Hedges v. Resolution Tr. Corp., 32 F.3d 1360, 1363 (9th Cir. 1994) ("there is no absolute right to counsel in civil proceedings"). "There is no constitutional right to counsel in a legal proceeding unless it is criminal or quasi-criminal in nature." Davis v. Cent. Bank (In re Davis), 23 B.R. 773, 776 (9th Cir. BAP 1982); see U.S. Const. amend. VI (applicable to "all criminal proceedings"); Cutter v. Seror (In re Cutter), 468 F. App'x 657, 658 (9th Cir. 2011) (rejecting claim of right to counsel in bankruptcy proceedings, noting that "the Sixth Amendment by its own terms applies only to criminal prosecutions").

Consequently, the mistakes or incompetence of counsel in a

14

bankruptcy case cannot amount to a violation of constitutional rights. See Yu v. Nautilus, Inc. (In re Yu), BAP No. CC-16-1045-KuFD, 2016 WL 4261655, at *7 (9th Cir. BAP Aug. 11, 2016) (rejecting the debtor's argument that she suffered ineffective assistance of counsel, because "[t]here is no guaranteed right to counsel in civil or bankruptcy proceedings - effective or otherwise"); see also Shepard v. Conklin (In re Shepard), BAP No. EC-09-1096-DJuBa, 2009 WL 7809003, at *8 (9th Cir. BAP Nov. 24, 2009) ("A 'full and fair opportunity to litigate' simply means that the debtor had a reasonable chance to appear in court and contest the factual and legal issues raised in the state court action, not that the debtor should have equal footing from a tactical standpoint.").

Ms. Toth cites Turner v. Rogers, 564 U.S. 431 (2011), for the proposition that due process requires the court to provide counsel in certain civil cases. However, the passage she quotes in the reply brief is not found in the Supreme Court decision. Moreover, Turner only considered "an indigent's right to paid counsel at such a [civil] contempt proceeding[,]" id. at 444, not whether a bankruptcy debtor has a right to counsel. The court ultimately held that "the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." Id. at 448. As such, Turner does not aid Ms. Toth's argument.

In an attempt to make sense of Ms. Toth's Sixth Amendment argument, Mr. Short charitably frames it as an argument

15

concerning the court's discretion to continue the hearing to allow for a substitution of counsel. Inexplicably, Ms. Toth rejects this characterization in her reply brief, making clear that the asserted error concerns only her purported constitutional right to the effective assistance of counsel, not the court's denial of a continuance to allow her to obtain counsel. As such, our review is limited to whether the court deprived her of this constitutional right, and we do not consider whether the court erred in refusing to continue the hearing.

Ms. Toth argues in passing that relief from the court's order was justified under Civil Rule 60, because she was surprised that she had to argue at the December 1 hearing. However, she never moved the bankruptcy court for relief under Civil Rule 60. We will not consider arguments raised for the first time on appeal. See Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts.").

Accordingly, we discern no error concerning Ms. Toth's alleged right to counsel or right to effective assistance of counsel.

**D.    The bankruptcy court did not deny Ms. Toth a fair trial.**

Ms. Toth groups a number of alleged errors under the umbrella of the denial of a right to a fair trial. Essentially, she argues that the court erred in denying the Renewed Motion to Compromise, granting alternative relief, and accepting the facts presented by Mr. Short in the Colorado state court proceedings. None of these arguments is persuasive.

16

**1. The bankruptcy court did not err in rejecting the proposed compromise and granting alternative relief.**

Ms. Toth's primary argument is that the court erred in granting alternative relief rather than approving the proposed compromise with Mr. Short. She contends that the court changed the agreement that was proposed in the Renewed Motion to Compromise and that, in doing so, the court denied her a fair trial. We discern no error.

In the first place, we do not understand why Ms. Toth objects to the court's disapproval of the compromise, because that is exactly what she asked the court to do.[6] Ms. Toth's opposition to the Motion to Compromise requested that Mr. Short not be allowed to handle the sale and asked that a realtor market and sell the Arizona Property. The court essentially granted her request and ordered the Trustee, not Mr. Short, to handle the sale of the Arizona Property. It also provided that, if the Trustee could not sell the Arizona Property within six months, he would abandon the Arizona Property. Thus, the terms of the approved compromise were more favorable to Ms. Toth than those of the proposed compromise.

In the second place, Ms. Toth does not explain why she thinks that the court erred when it granted alternative relief. In fact, that ruling was partly favorable to her, because it gave the Trustee only six months to sell the Arizona Property and

---

[6] Even Ms. Toth recognized in her appellate brief that the court approved alternative relief in consideration of her objection: "Further that exact language [in the court's ruling on the Renewed Motion to Compromise] is what APPELLANT used to submit an objection to the Motion."

17

provided that the Arizona Property would be abandoned to her if the Trustee did not get an adequate offer during that period.

Ms. Toth also argues that the court treated her unfairly when it changed the terms of the compromise in its written ruling, rather than at the December 1 hearing, thereby depriving her of an opportunity to contest the ruling. This argument misrepresents what happened. The court orally explained its ruling at the December 1 hearing at least three times directly to Ms. Toth. She had an opportunity to respond to the alternative relief and did so at length. The court bent over backwards to explain its ruling to her and allow her to argue.

Ms. Toth alternatively argues that the court should have approved the "compromise" reached by herself and the Trustee, whereby she would pay $22,000 to her estate and retain the Arizona Property. However, there is no indication in the record that the Trustee agreed to this compromise.[7] We thus decline to enforce Ms. Toth's supposed compromise for $22,000.

**2.  Ms. Toth does not establish any evidentiary error.**

Ms. Toth argues in passing that she "was not allowed to examine documents handed into the court and was given no access to the same." However, she does not specify what documents were handed to the court or when. We will not review arguments on appeal that are not distinctly argued or supported by the record. See Christian Legal Soc. Chapter of Univ. of Cal. v. Wu, 626 F.3d

---

[7] Ms. Toth admitted at the December 1 hearing that there was no agreement to settle for $22,000: "The deal is and the deal that was settled back in February was that they take the $22,000 or the $20,000 to settle this case and **they said that's not enough for us.**" (Emphasis added.)

18

483, 487 (9th Cir. 2010) (An appellate court "won't consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief. Applying this standard, we've refused to address claims that were only argue[d] in passing, or that were bare assertion[s] . . . with no supporting argument.").

Similarly, she argues that the court did not consider evidence that she presented. Again, she does not identify what evidence the court allegedly ignored, so we will not review this issue on appeal.[8] See id.

### 3. Ms. Toth does not establish any fraud upon the court.

Ms. Toth also argues that the Colorado Judgment was wrong due to Mr. Short's alleged fraud and that the bankruptcy court should not have accepted the facts therein. However, as we have stated above, the Colorado Judgment is beyond the scope of this appeal. We therefore cannot review Ms. Toth's arguments that Mr. Short made false statements and committed fraud upon the court.

**E. The Panel denies Ms. Toth's request to strike Mr. Short's excerpts of record and will only consider her disputed documents for background reference.**

Finally, the parties have made competing requests to strike portions of the other's excerpts of record.

---

[8] In her reply brief, Ms. Toth argues that the correspondence between herself and Mr. Stoker showed that her attorney abandoned her, and if the court "was afforded review of these attorney-client privileged documents during the hearing of December 1, 2015, the court would have evidence proving that Stoker was deficient, recklessly abandoned client [sic], caused undue hardship on APPELLANT and the court." In other words, she admits that these documents were not properly before the court and that the court could not have considered them in rendering its decision.

19

Mr. Short notes that Ms. Toth's excerpts of record are "full of documents that were not filed in the Chapter 7 bankruptcy or the adversary proceeding." He points to thirty documents that were not filed with the bankruptcy court.

In response, Ms. Toth concedes that at least a few of those documents were not before the court, because had the court seen those documents, it would have found in her favor.

Except to aid in our understanding of the relevant factual background and procedural history of this case, we will not consider the thirty documents identified by Mr. Short. As far as we can tell, these documents were not presented to the bankruptcy court. See Graves v. Myrvang (In re Myrvang), 232 F.3d 1116, 1119 n.1 (9th Cir. 2000) (except in rare cases where "'the interests of justice demand it,' an appellate court will not consider evidence not presented to the trial court"); Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988) (an appellate court is "concerned only with the record before the trial judge when his decision was made").

Conversely, Ms. Toth objects to certain portions of Mr. Short's supplemental designation of record. We overrule Ms. Toth's objections and will consider the December 1 hearing transcript (which should have been included in Ms. Toth's excerpts of record). We will consider the bankruptcy court's nondischargeability judgment (issued post-appeal) and the documents in the Colorado case only to the extent necessary to understand the factual background and procedural history of this case.

**CONCLUSION**

For the reasons set forth above, the bankruptcy court did not err when it (1) denied the Motion to Convert and (2) denied the Renewed Motion to Compromise and approved alternative relief. Accordingly, we AFFIRM.